IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | Civil Action Number: 3:25-cv-04020-SAL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| The United States of America, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AMENDED COMPLAINT

Defendant United States of America, Heather S. Sniptes,[1] and Robin L. Blume[2] move to dismiss this Federal Tort Claims Act (FTCA) and *Bivens*[3] action pursuant to Rules 12(b)(1) and (6) on grounds that: (1) Plaintiff has failed to state a claim; (2) Plaintiff's claims are barred by judicial and quasi-judicial immunity; and (3) the Complaint is frivolous.

## PROCEDURAL HISTORY[4]

Plaintiff filed suit on May 14, 2025, citing the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, as the basis for this Court's jurisdiction. Dkt. No. 1, p.1. In his Complaint, Plaintiff specifically disclaimed that he was alleging a constitutional tort, and

[1] In the Amended Complaint, Plaintiff names a "Heather S. Sniptes." The Clerk of Court does not have an employee by that name.

[2] Undersigned counsel does not represent Doe Defendants 1-100 in their individual capacities, but nevertheless notes that the arguments in support of dismissal of the named Clerks of Court would likely apply equally to the Doe Defendants.

[3] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[4] The factual background in this section is drawn in part from Plaintiff's Amended Complaint, Dkt. No. 65. Defendants reserve the right to contest Plaintiff's factual allegations and assert additional defenses.

he named only the United States as a defendant. Dkt. No. 1, p.6, ¶ 38. On August 20, 2025, the United States filed a Motion to Dismiss, Dkt. No. 23, asserting defenses including judicial and quasi-judicial immunity. After full briefing on the Motion to Dismiss, and a Report and Recommendation (Dkt No. 51) from the assigned Magistrate Judge, on February 9, 2026, the Court entered an order finding that quasi-judicial immunity applied and dismissed Plaintiff's claim without prejudice. Dkt. Nos. 57, 58.

On March 2, 2026, Plaintiff filed an Emergency Petition to Vacate and for Leave to File Amended Complaint and Reopen the Case in the Interest of Judicial Efficiency. Dkt. No. 60. Plaintiff attached to this Petition a proposed Amended Complaint, Dkt. No. 60-1, asserting two causes of action, an FTCA claim and a *Bivens* claim, based on the asserted "negligent and intentional acts of a federal court clerk who refused to file Plaintiff's properly submitted Notice of Appeal, thereby denying him access to appellate review." Dkt. No. 60-1, p. 1. In a text order dated July 21, 2026, the Court granted Plaintiff's Emergency Petition and directed the Clerk of Court to file Plaintiff's Amended Complaint. Dkt. No. 64.

In his Amended Complaint, Plaintiff asserts two claims. Dkt. No. 65. In the first count, Plaintiff reiterates his claim that the United States is liable in tort under the FTCA for what Plaintiff is now characterizing as the Clerk of Court's negligent and intentional acts in failing to docket his notice of appeal.[5] Dkt. No. 65, p. 2–3, ¶¶ 20. In the second count, Plaintiff purports to allege a constitutional tort based on the Clerks of Court having "intentionally, willfully, and with reckless disregard of Plaintiff's constitutional rights, refused to file Plaintiff's Notice of Appeal." Dkt. No. 65, ¶ 35. As damages, Plaintiff claims $5,106,278.22

[5] The underlying action in which Plaintiff sought to file a notice of appeal is *Bruce v. Bank of America, N.A., et al.*, 2:19-2854-BHH.

in compensatory damages, additional compensation for emotional distress, punitive damages, and such other and further relief as the Court deems just and proper. Dkt. No. 65, p. 8.

## STANDARDS OF REVIEW

### A. Federal Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) is "a challenge to the court's subject matter jurisdiction." *Hoblick v. United States*, 526 F. Supp. 3d 130, 132 (D.S.C. 2021) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006)). Subject matter jurisdiction is a threshold issue that must be decided before reaching the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th Cir. 2005). Plaintiff bears the burden of proving subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

### B. Federal Rule 12(b)(6) – Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). In evaluating plausibility, the court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation" of the elements of a particular cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

### I. Plaintiff has failed to state a claim in his Amended Complaint under *Bivens*.

In Count 2 of his Amended Complaint, Dkt. No. 65, Plaintiff purports to allege a claim against the named and Doe Clerks of Court under the *Bivens* doctrine, stating that the Clerks of Court "intentionally, willfully, and with reckless disregard of Plaintiff's constitutional rights, refused to file Plaintiff's Notice of Appeal."[6] Dkt. No. 65, ¶ 35. However, Count 2 fails to state a claim.

In its landmark decision in *Bivens*, the Supreme Court took the significant step of creating a private cause of action against individual federal employees for alleged violations of the Constitution, but only after finding that there were "no special factors counseling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. Since deciding the *Bivens* case, the Court has repeatedly recognized that a *Bivens* remedy "is not an automatic entitlement" and "in most instances [the Court has] found a *Bivens* remedy unjustified." *Wilkie v. Robbins,* 551 U.S. 537, 550 (2007); *see also Goldey v. Fields*, 606 U.S. 942, 945 (2025). Indeed, there are only three, decades-old cases in which the Supreme Court has recognized such a remedy: *Bivens*, 403 U.S. 388, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court has recognized that "[e]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675).

#### a) *Egbert* and the *Bivens* Framework.

Consistent with the Supreme Court's disapproval of expanding *Bivens*, the framework for

[6] Plaintiff's cursory conclusion that the Clerks of Court Defendants intentionally, willfully, and recklessly failed to file his notice of appeal is insufficient to state a claim. *Iqbal*, 556 U.S. at 681 (noting that "conclusory" allegations are "not entitled to be assumed true") (internal citation omitted).

assessing *Bivens* claims "places significant obstacles in the path to recognition of an implied cause of action." *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 358 (2021). "First, [courts must] ask whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. (quoting *Ziglar*, 582 U.S. at 136).

In *Egbert*, the Supreme Court issued several clarifications to this framework that multiply the obstacles a *Bivens* claimant faces. First, *Egbert* made clear that "recognizing a *Bivens* cause of action is an extraordinary act," and courts thus have "a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief[,]" no matter when a defendant raises the issue. *Egbert*, 596 U.S. at 497 n.3 (cleaned up). Second, because even "potential special factors that previous *Bivens* cases did not consider" make a context "new," *id*. at 492 (quoting *Ziglar*, 582 U.S. at 140), the two-part *Bivens* analysis "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id*. Finally, *Bivens*, *Passman*, and *Carlson* "predate[] [the Court's] current approach to implied causes of action" and therefore should carry "little weight." *Id*. at 500–01. This means "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id*. at 501 (quoting *Ziglar*, 582 U.S. at 139). Collectively, these principles impart that courts must always analyze whether a *Bivens* claim should be allowed to proceed, and that analysis must always consider special factors regarding separation of powers. A *Bivens* remedy will therefore be

unavailable "in most every case." *Id*. at 492.

In *Tate v. Harmon, et al.*, 54 F.4th 839 (4th Cir. 2022), the Fourth Circuit applied the *Egbert* framework. The court recognized the "critical condition of *Bivens* jurisprudence" and noted the mandate from the Supreme Court that "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens, Passman,* or *Carlson*." *Id*. at 845. The court also stated that any uncertainty in whether "special factors" counsel hesitation in recognizing a *Bivens* remedy should be sufficient to resolve that issue in the affirmative, "[h]eeding the Supreme Court's warnings that courts should not be in the business of creating causes of action and that they must give the legislative branch 'utmost deference' in considering whether to do so." *Id*. at 848.

The case at bar does not present the "unusual circumstances" under which a *Bivens* claim should be allowed to proceed. *Egbert,* 596 U.S. at 486. Whether this Court analyzes Plaintiff's claim under the two-step approach, or simply asks the essential single question of whether Congress is better equipped than the Judiciary to create this type of remedy, dismissal is warranted. As discussed below, Plaintiff's putative *Bivens* claim presents a new context both because this clam diverges factually and legally from the Supreme Court's three *Bivens* cases and because the claim raises potential special factors that the Court has not considered in the past.

**b) Plaintiff's Claim Arises in a New *Bivens* Context.**

Plaintiff's putative *Bivens* claim presents a new context both because this claim diverges factually and legally from the Supreme Court's three *Bivens* cases. To constitute a new context, a case need only be "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Ziglar*, 582 U.S at 139. The Court's understanding of a new context "is broad," *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020), and the analysis is "easily satisfied" even for claims that have "significant parallels" to one of the three previously recognized *Bivens* contexts, *Ziglar*,

582 U.S. at 149. In *Egbert*, for example, the Court affirmed the Ninth Circuit's holding that the respondent's Fourth Amendment claim presented a new context even though, as in *Bivens*, he alleged that a federal law enforcement agent entered his property without a warrant and unlawfully seized him. 596 U.S. 482. After *Egbert*, courts cannot assume a *Bivens* claim can proceed without a special factors analysis, regardless of how similar it is to prior *Bivens* cases. *See id*. (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

Here, Plaintiff's claim bears little to no resemblance to *Bivens, Passman,* or *Carlson*, and instead presents a new context and a "new category of defendants. *Ziglar*, 582 U.S. at 135. *Passman*, 442 U.S. 228, involved a Fifth Amendment due process claim for sex discrimination in an employment context. *Carlson*, 446 U.S. 14, focused on Eighth Amendment claims in the context of healthcare at a corrections facility. *Bivens* involved a Fourth Amendment claim for damages where narcotics agents allegedly entered Bivens' home, placed him in manacles, and threatened his family. In contrast, Plaintiff describes his access to court claim as an "intentional denial of [his] First Amendment right of access to the courts and [] Fifth and or Fourteenth Amendment due process right to fair procedure" (Dkt. No. 65, ¶ 36). Further, the Supreme Court has not extended *Bivens* to First Amendment claims. *See Egbert*, 596 U.S. at 498 (citing *Reichle v. Howards*, 566 U.S. 658, 663, n. 4 (2012)).[7] Because Plaintiff's claim shares little in common factually or legally with *Bivens, Passman,* or *Carlson*, and because the Supreme Court has not extended *Bivens* to a First Amendment claim, the Court here should find a new context and decline to extend a *Bivens* remedy to Plaintiff's claim that he has been denied access to the courts.

[7] The Court has declined to extend *Bivens* to a First Amendment speech claim involving federal employment, *see Bush v. Lucas*, 462 U.S. 367, 368 (1983), and did not reach the question of whether *Bivens* extended to First Amendment retaliatory arrest claims in *Egbert*.

The factual and legal differences between Plaintiff's allegations and *Bivens*, *Passman,* and *Carlson* are "meaningful" on their own, but, as discussed below, Plaintiff's allegation of constitutional deprivation by one or more clerks of court also raise "potential special factors," which counsel against inferring any *Bivens* claim in the instant litigation. *See Egbert*, 596 U.S. 482.

**c) Special Factors Counsel Against Inferring Any *Bivens* Claims in This Matter.**

After *Egbert*, courts cannot assume a *Bivens* claim can proceed without a special factors analysis, regardless of how similar it is to prior *Bivens* cases. *See id*. (Gorsuch, J., concurring). This is because even "potential special factors that previous *Bivens* cases did not consider" make a context "new," *id*. at 492 (quoting *Ziglar*, 582 U.S. at 140). As articulated by the Supreme Court,

> [W]e have explained that a new context arises when there are "potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1860. And we have identified several examples of new contexts—*e.g.*, a case that involves a "new category of defendants," *Malesko*, 534 U.S. at 68, 122 S.Ct. 515; *see also Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1876—largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action. We have never offered an "exhaustive" accounting of such scenarios, however, because no court could forecast every factor that might "counse[l] hesitation." *Id.*, at ——, 137 S.Ct., at 1880. Even in a particular case, a court likely cannot predict the "systemwide" consequences of recognizing a cause of action under *Bivens*. *Ziglar*, 582 U. S., at ——, 137 S.Ct. at 1858. That uncertainty alone is a special factor that forecloses relief. *See Hernández v. Mesa*, 885 F.3d 811, 818 (C.A.5 2018) (en banc) ("The newness of this 'new context' should alone require dismissal").

*Egbert*, 596 U.S. at 492–93.

This case presents "special factors," indicating that Congress is better suited than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). The special factors inquiry is broad-ranging and simply asks "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). "[S]eparation-of-powers principles are or should be central to the

analysis." *Ziglar*, 582 U.S. at 135.

The "special factors" in the instant matter include the unique position held by a Clerk of Court and his/her staff, who are charged with carrying out judicial orders and administering the federal judicial docket. As stated by one court in declining to extend a *Bivens* remedy to claims against the district court clerk of court: "Allowing litigants to sue judicial employees in their individual capacity for money damages 'would contribute not to principled and fearless decision making but to intimidation.'" *Richmond v. S. Dakota*, No. 4:24-CV-04067, 2025 WL 815721, at *10 (D.S.D. Mar. 14, 2025) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Also, as recognized in *Sindram v. Suda*, a damages remedy is "not necessary to control unconstitutional conduct [by clerks of court] in light of the numerous safeguards that are 'built into the judicial process,' especially the 'correctability of error on appeal.'" 986 F.2d 1459, 1461 (D.C. Cir. 1993). Too, there is "[t]he danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts…." *Dellenback v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989) (citation omitted). These special factors counsel against extending the *Bivens* remedy to Plaintiff's claim that he was denied an appeal due to the conduct of one or more employees of the office of the Clerk of Court.

Extending *Bivens* to provide a damages remedy against individual clerks of court and employees in the Clerk of Court's Office could also unduly affect judicial operations because it "would undoubtedly lead to new difficulties and expense in recruiting" employees to administer the federal docket and would impose additional burdens and costs on the District Court. *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988); *see also Ziglar*, 582 U.S. at 136 ("[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," including "burdens on Government employees who are sued personally, as well as

the projected costs and consequences to the Government itself."). Thus, under the special factors analysis, there are a number of compelling reasons not to interpose a *Bivens* remedy here, and, respectfully, this Court should decline to recognize one.

## II. Judicial and quasi-judicial immunity bar Plaintiff's claims premised on purported actions by the Clerk of Court's Office in this case.

### a) The FTCA Incorporates the Defense of Judicial Immunity.

"The FTCA is a limited waiver of immunity, imposing tort liability on the United States only in the same manner and to the same extent as a private individual under like circumstances, and only to the extent that a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Anderson v. United State*s, 669 F.3d 161, 164 (4th Cir. 2011) (cleaned up) (citing 28 U.S.C. §§ 1346(b)(1) and 2674). The FTCA permits the United States "to assert any defense based on judicial . . . immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim." 28 U.S.C. § 2674; *see Akutowicz v. United States,* 859 F.2d 1122, 1125–26 (2d Cir. 1988) ("[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." (citation omitted)); *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983) (same). *See also Meyers v. United States*, No. 7:23cv00347, 2024 WL 1893607, *3 (W.D. Va. April 30, 2024) (applying § 2674 in a suit against various court personnel, including clerks of court, and finding "the past and current Clerks of Court are entitled to quasi-judicial immunity for tasks they undertook as part of the judicial process").

### b) Common Law Extends Judicial Immunity to Tasks Performed by Clerks of Court that Are an Integral Part of the Judicial Process.

"The common law provided absolute immunity from [ ] damages liability for all persons—

governmental or otherwise—who were integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 336 (1983). The policy supporting this common law application of immunity was that,

> "[C]ontroversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, .... Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S.478, 512 (1978).

*Briscoe*, 460 U.S. at 335 (cleaned up).

While the Fourth Circuit Court of Appeals has not issued a recent published decision addressing the bounds of common law immunity of a clerk of court for tasks integral to the functioning of the court,[8] it has issued several unpublished decisions speaking to the issue. In *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012), while allowing the plaintiff an opportunity to replead his complaint, the Fourth Circuit stated, "A court clerk is generally entitled to quasi-judicial immunity." *Id.* (citing *Briscoe*, 460 U.S. 334–35); *see also Hamilton v. Murray*, 648 F. App'x 344, 345 (4th Cir. 2016) ("court clerks enjoy derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction" and even if the clerk acted intentionally, "this fact alone [] would not deprive [the clerk] of absolute quasi-judicial immunity from suit"); *Loftis v. Cty. of Horry, S.C.*, No. 91-7659, 1991 WL 249522, at *1 (4th Cir. Nov. 27, 1991) ("The clerk of court is entitled to derivative immunity if he was acting under the court's direction."); *Jackson v. Houck*, 181 F. App'x 372, 373 (4th Cir. 2006) ("Absolute immunity

[8] In *McCray v. State of Maryland*, 456 F2d 1, 3 (4th Cir. 1972), the court stated that a clerk of court could be sued under 42 U.S.C. § 1983, but that decision appears to have been overruled by *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995) (holding that causes of action against clerks of court for negligent conduct impeding access to the courts cannot survive). *See, e.g., Mcfadden v. Clarendon Cty. Sheriff's Dept.*, No. 3:00-2536-24, 2001 WL 34085610, at *8 (May 21. 2001) (recognizing that *Pink* overruled *McCray*).

'applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function.'")

Other Circuit Courts of Appeal have grappled with the issue. In *Sindram v. Suda*, 986 F.2d 1459, 1460–61 (D.C. Cir. 1993) (collecting cases),[9] the court held that clerks of court, "are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Id.*[10] The court went on to say that suits against clerks of court are generally not necessary to control unconstitutional conduct in light of the safeguards built into the judicial process, and that if immunity were not extended to clerks, disappointed litigants might pursue clerks of court in the absence of a claim against the judge. *Id. See also Acres Bonusing, Inc v. Marston*, 17 F.4th 901, 916 (9th Cir. 2021) ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." (citation omitted)); *Wymore v. Green*, 245 F. App'x 780, 783 (10th Cir. 2007) (determining a clerk of court was entitled to quasi-judicial immunity when the clerk refused to file court documents because her actions were judicial acts having an integral relationship with the judicial process); *Rodriguez v.*

---

[9] *Sindram* was cited with approval by the Fourth Circuit in *Jackson v. Houck*, 181 F. App'x 372 (2006).

[10] Rules 3 and 4 of the Federal Rules of Appellate Procedure provide that a party may commence an appeal by filing a notice of appeal with the District Court Clerk of Court within the time allowed. Fed. R. App. P. 3, 4. While Plaintiff characterizes the filing of the notice of appeal as "ministerial" (Dkt. No. 65, ¶ 9), even assuming that filing a notice of is ministerial does not preclude that the filing of the notice of appeal is also integral to the Clerk of Court's duty to create and maintain the docket. As the Magistrate Judge correctly found, entry of the notice of appeal is part of maintaining the public docket of a case. Dkt. No. 51, p. 4. *See also Arroyo v. Zamora*, No. 3:17-721-FDW-DCK, 2018 WL 1413195, at *4 (W.D.N.C. Mar. 21, 2018) (finding that a clerk of court's duties including handling of notices of appeal were integral to the judicial process such that quasi-judicial immunity applied and the clerk was immune from suit); *Qtaish v. U.S. District Court for District of Columbia*, No. 23-3702, 2023 WL 9000759, (D.D.C. Dec. 28, 2023) (where plaintiff faulted the clerk of court for not docketing an appeal in one of her cases, the court stated that absolute immunity extends to clerks of court performing tasks that are an integral part of the judicial process).

*Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (collecting cases) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and [court clerks] are afforded absolute immunity."); *Sharma v. Stevas*, 790 F.2d 1486 (9th Cir. 1986) (holding that the defendant clerk of the United States Supreme Court had absolute quasi-judicial immunity from liability under the FTCA because his challenged activities were an integral part of the judicial process). These same policy considerations support this Court's applying judicial immunity in the case at bar.[11]

**c) Jurisprudence Supports That a Court Clerk Is Generally Entitled to Quasi-Judicial Immunity Under the FTCA and Civil Rights Statutes.**

This District Court has often found clerks of court have absolute or quasi-judicial immunity from actions for damages arising from acts they are specifically required to do under court order, at a judge's direction, or that are an integral part of the judicial process.

- *Abebe v. Propes*, No. 0:11-1215-MBS-PJG, 2011 WL 2581385, at *3 (D.S.C. June 3, 2011) ("Absolute judicial immunity has thus been extended to non-judicial officers, such as clerks of court 'where their duties had an integral relationship with the judicial process.'" (citation omitted)).

- *Robinson v. McBride*, No. 3:13-352-CMC-TER, 2013 WL 2099491, at *4 (Apr. 12, 2013), R&R adopted by 2013 WL 2099707 (D.S.C. May 14, 2013), *aff'd*, 540 F. App'x 212 (4th Cir. 2013) (concluding that a clerk of court's alleged failure to file the plaintiff's notice of intent to appeal involved the performance of official tasks, which include filing and processing pleadings and orders, so the clerk of court was protected by quasi-judicial immunity).

- *Martin v. Rush*, No. 5:13-00693-TLW, 2013 WL 2285948, at *5 (D.S.C. May 23, 2013) (summarily dismissing claims against clerks of court based on quasi-judicial immunity, stating that the "doctrine of absolute quasi judicial immunity has also been adopted and made applicable to court support personnel because of the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing

[11] Several treatises collect cases relevant to this topic. *See e.g.,* § 7:29. Who is protected: the functional approach—In the circuits and the states—Court personnel, 2 Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 7:29 (3d ed. 1991); 21 *C.J.S.* Courts § 341 (2006); Rotunda and Nowak, § 19.23(c) Quasi-Judicial Agencies, 4 *Treatise on Const. L.* § 19.23(c) (3d ed. 2006).

the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." (internal quotation and citation omitted)).

- *Al-Mujahidin v. McBride,* No. 9:13-2671-BHH, 2015 WL 402918, at *4 (D.S.C. Jan. 28, 2015) (collecting cases) ("Clerks of Court are generally afforded quasi-judicial immunity from suit on claims involving 'tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'").

- *Taylor v. Brooks*, No. 3:15-1138-RMG, 2015 WL 4274834, at *2 (D.S.C. July 14, 2015) (citation omitted) ("This doctrine is designed to prevent court staff from being sued by disappointed litigants who 'seek to vent their wrath on clerks, court reporters and other judicial adjuncts' because they are barred by judicial immunity from suing judges.");

- *Beaton v. Hood*, No. 9:17-1157-CMC, 2017 WL 4540765 (D.S.C. Oct. 11, 2017) (holding that judicial employees, including a named clerk of court, were entitled to judicial and quasi-judicial immunity);

- *Holcomb v. Greenville Cnty. Clerk of Ct.*, No. 6:17-02001-MGL-SVH, 2017 WL 4023128, at *3 (D.S.C. Aug. 23, 2017), *R&R adopted by* 2017 WL 4012389 (D.S.C. Sept. 12, 2017) (noting that immunity was extended to court support personnel because "disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts" (internal citation and quotation marks omitted)).

- *Hamilton v. United States*, No. 2:20-01666-RMG, 2020 WL 5939235, at *3 (D.S.C. Oct. 7, 2020), *aff'd*, 848 F. App'x 564 (4th Cir. 2021) ("[C]laims against the deputy clerk for tasks undert[aken] as part of the judicial process are subject to summary dismissal based on quasi-judicial immunity.").

- *Petty v. Cox*, No. 7:25-00574-TMC, 2025 WL 349949, *3 (D.S.C. Dec. 5, 2025) ("clerks of court are afforded quasi-judicial immunity from suit involving 'tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." (cleaned up)).

- *Sequoia v. Sequoia*, No. 8:25-0158-DCC-WSB, 2025 WL 1118591, at *6 (Jan. 9, 2025), *R&R adopted*, 2025 WL 115680 (D.S.C. April 15, 2025) ("[C]lerks of court are generally afforded quasi-judicial immunity from suit on claims involving 'tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'").

- *Fisher v. Whitley*, No. 6:24-1950-SAL, 2025 WL 972312, at *2 (D.S.C. Apr. 1, 2025) (applying absolute immunity to clerk of court's alleged failure to file a postconviction application).

- *Worrick v. Wilson*, No. 2:25-00572-RMG-MHC, 2026 WL 244556, at * (Jan. 7, 2026), *R&R adopted*, 2026 WL 24394 (D.S.C. Jan. 29, 2026) ("clerks of court are generally afforded quasi-judicial immunity from suit on claims involving 'tasks so integral or intertwined with the judicial process that these person are considered an arm of the judicial office who is immune'").

- *Terry v. Watlington*, No. 3:25-13234, 2026 WL 979222, *4 (Feb. 12, 2026), *R&R adopted*, 2026 WL 976855 (D.S.C. April 10, 2026) (John/Jane Doe Court Officials entitled to quasi-judicial immunity).

- *Wright v. Quinn*, No. 6:25-13965-DCC-WSB, 2026 WL 1406614, *7 (D.S.C. Feb. 18, 2026) (clerk of court entitled to quasi-judicial immunity) (collecting cases).

- *Amerson v. Allen*, No. 4:25-11896-JD, 2026 WL 457296, at *2 (D.S.C. Feb. 18, 2026) ("clerk of court is entitled to quasi-judicial immunity for actions taken in connection with the judicial process.").

- *Victoria Hall, Plaintiff, v. Julie Poley, Michael A. Faleck, Sulay Grant, Dawn Hill-Kearse, Defendants.,* No. 6:26-01500-DCC-MHC, 2026 WL 2116613, at *4 (D.S.C. May 28, 2026) ("Court support personnel [–here a clerk of court–] have quasi-judicial immunity from claims for damages and injunctive relief arising out of their actions taken in connection with the judicial process.").

- *Holtzclaw v. Gresham*, No. 6:25-cv-09742-DCC-KFM, 2026 WL 2033797, * 1 (D.S.C. July 14, 2026) (clerk of court was acting in role "under the direction of judicial officers, thus, he has immunity from suit [] and should be dismissed.").

Here, any actions by Defendant Clerk of Court's with respect to filing the notice of appeal were governed by Rule 79[12] and/or were an integral part of the judicial process. *See* Fed. R. Civ. P. 5(d)(4). Judicial and quasi-judicial immunity therefore apply to bar Plaintiff's claims.

Further, setting aside the implausibility of Plaintiff's contention that a clerk of court intentionally failed to file his notice of appeal, it is the nature of the act, and whether it was integral

[12] Rule 79 of the Federal Rules of Civil Procedure requires that the Clerk of Court keep a record of civil proceedings by civil action number, including papers filed with the Clerk, process issued, appearances, orders, verdicts, and judgments. Fed. R. Civ. P. 79. *See also* Fed. R. Civ. P. 5(d)(4). That record of proceedings and filings is the civil docket, and the Clerk of Court's action in placing an entry on the docket is referred to as "to docket" or "docketing."

to the judicial process, that determines whether the clerk of court has quasi-judicial immunity. *See Morrison v. 13th Judicial District Court*, CV-24-155-BLG-DLC, 2025 WL 27589, at *2 (D. Mont. Jan. 3, 2025). *See also Jenkins v. Clerk of Court*, 150 F. App'x 988, 990 (11th Cir. 2005) ("Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process."); *Hamilton*, 648 F. App'x at 345 (stating that "court clerks enjoy derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction," and that to the extent that the plaintiff "alleged that the clerk acted intentionally, this fact alone, even if true, would not deprive her of absolute quasi-judicial immunity from suit."). *Cf. Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (judge not deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority).

Because the Defendant Clerks of Court are entitled to absolute and quasi-judicial immunity, the United States is also entitled to immunity. 28 U.S.C. § 2674. Accordingly, this Court lacks jurisdiction over Plaintiff's suit against the United States[13] based on the Clerk of Court's alleged action in failing to docket the notice of appeal.[14]

**III. Plaintiff fails to state a claim for relief under the FTCA.**

Even if Plaintiff's FTCA claim was not jurisdictionally barred, it would be subject to dismissal for failure to state a claim. Plaintiff denominates his claim as a claim for negligence in the performance of a ministerial duty. Plaintiff does not further particularize what tort he is claiming. Dkt No. 65, p. 5. However, his central claim is that he was deprived of his right to appeal

---

[13] Judicial immunity also precludes any *Bivens* claim against the individual clerks of court.

[14] The law of the case doctrine applies to the extent that Plaintiff is again attempting to allege a negligent failure to file by the Defendant clerks of court. *See Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163, 169 (4th Cir. 2025).

in violation of the U.S. Constitution, which is a Due Process claim. "[T]he United States has [] not rendered itself liable under [the FTCA] for constitutional tort claims." *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001) (citation omitted). Plaintiff has fatally cobbled together concepts from constitutional torts and simple negligence, resulting in a claim that fails to comport with Rule 8 of the Federal Rules of Civil Procedure, fails to state a claim, and for which there is no waiver of sovereign immunity. *Williams*, 242 F.3d at 6 (a federal constitutional tort cannot provide the basis for the tort under the FTCA). *See also Mokhtarian v. Fasci*, 481 F.Supp.3d 503, 511 (D. Md. 2020) (United States has not waived sovereign immunity under the FTCA for constitutional torts based on substantive due process rights; constitutional torts are only available against individual defendants and not the United States).

Also, Plaintiff has failed to state a basic claim for negligence. To state a cause of action for negligence, "a plaintiff must show: (1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the Plaintiff; and (4) that damages proximately resulted from the breach of duty." *In re Blackbaud, Inc., Customer Data Breach Litigation*, 567 F. Supp. 3d 667 (D.S.C. 2021). "Proximate cause requires proof of: (1) causation-in-fact and (2) legal cause." *Humphrey v. Day & Zimmerman Intern., Inc.*, 997 F. Supp. 2d 388, 394 (D.S.C. 2014). Plaintiff has failed to set forth in his Complaint plausible allegations of proximate cause. That is, Plaintiff has not alleged —nor could he plausibly do so—that had the Clerk of Court docketed the appeal, plaintiff would have succeeded on appeal and obtained a reversal of the District Court's findings. Dkt. 65, p. 5.

Plaintiff's suit necessarily relies on the success on appeal of his allegations in *Bruce v. Bank of America, N.A.*, 2:19-2854-BHH, wherein Plaintiff sought to confirm a fraudulent arbitration award purportedly entered by Sittcomm Arbitration Association (ECF 1-1). Plaintiff's

claims in *Bruce* were clearly frivolous. Opinion and Order, ECF 1-2 (referencing Plaintiff's failure to present any evidence establishing the existence of a binding arbitration award and his fatally flawed assertions).[15] In the instant case, then, Plaintiff has failed to state a claim because he has failed to plausibly allege causation-in-fact or legal cause. *Twombly*, 550 U.S. at 555.

In addition, as to Plaintiff's claim for damages for emotional distress, there is no right to an award for damages for emotional distress in the absence of symptoms of related disease. *See Spaugh v. Atlantic Coast Line R. Co.*, 158 S.C. 25, 155 S.E. 145 (1930) (requiring physical manifestation of emotional injury to constitute compensable damages.). To the extent Plaintiff alleges purely emotional distress, he has failed to state a claim.

## IV. The Court has inherent authority to dismiss frivolous actions.

"[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid." *Ross*, 493 F. App'x at 406 (collecting cases). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("Frivolous" includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless.") Plaintiff's Amended Complaint is frivolous both because he is

[15] *See also, Pena v. TD Auto Finance LLC*, 860 F. App'x (3d Cir. 2021), wherein the Third Circuit affirmed the judgment of the lower court. At the district court level, TD Auto Finance had characterized the purported Sitcomm Arbitration Association ("Sitcomm") award as a "sham." *Id.* The district court had found that the purported arbitration award from Sitcomm was not genuine, and that other courts had denied similar requests to confirm awards issued by Sitcomm Arbitration Association because the awards were illegitimate. *Id. See also Magee v. Nationstar Mortgage, LLC*, No. 5:19-MC-017-H, 2020 WL 1188445, at *1 (N.D. Tx. Mar. 11, 2020) (collecting cases detailing Sitcomm's fraudulent arbitration scheme). Sitcomm has been associated with the "sovereign citizens" movement. *See* https://lasvegas.adl.org/new-sovereign-citizen-bogus-arbitration-tactics-appearing-in-many-states/.

seeking damages on the basis of a fraudulent suit, n. 11 *supra.*, and because his claims are barred by the doctrine of judicial immunity. Respectfully, this case should, therefore, be dismissed. *Meyers*, 2024 WL 1893607, at *3 (finding an FTCA claim to be frivolous because the past and current clerks of court had quasi-judicial immunity for tasks they undertook as part of the judicial process in administering the pre-filing injunction).

**CONCLUSION**

For the foregoing reasons, Defendant United States respectfully requests that this Court grant Defendant's Motion and dismiss Plaintiff's Complaint.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *s/Beth Drake*
Beth Drake (#5598)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Phone: (803) 929-3061
Email: Beth.Drake@usdoj.gov

August 4, 2026

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that she has caused the attached **MOTION TO DISMISS AMENDED COMPLAINT** to be served by an employee of the Office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers.

Therefore, on August 4, 2026, a copy of the foregoing document will be filed via the Court's CM/ECF system and will be served by U.S. mail to the name and address listed below from the United States Attorney's Office, 1441 Main Street, Suite 500, Columbia, South Carolina 29201.

The undersigned also certifies that she has provided Plaintiff with copies of any unpublished decisions which are cited herein.

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484

*s/Beth Drake*
BETH DRAKE (#5598)
Assistant United States Attorney